RECEIVED OCT 2 4 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN-DUBUQUE DIVISION

UNITED STATES OF AMERICA,
         Respondent,

vs.                               Case No. 08-1043 LBR
                                         07-1014 LBR

COREY LIDELL WOODARD,
         Petitioner.

---

**MOTION TO SUPPLEMENT § 2255 MOTION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, 15(d) AND THE RULES GOVERNING § 2255 PROCEEDINGS, RULE 12 WITH MOTION FOR MODIFICATION OF IMPOSED TERM OF IMPRISONMENT (18 U.S.C.S. § 3582(C)(1)(B)**

---

COMES NOW, Corey Lidell Woodard, pro se, defendant/petitioner, ("Woodard" herein) and puts forth this supplementation pursuant to Fed.R.Civ.P., 15(d), due to the Court not adjudicating his § 2255 as yet.

In support thereof, Defendant represents as follows:

JURISDICTION:

This Court has jurisdiction pursuant to 28 U.S.C. § 2255 and Federal Rules of Civil Procedure, 15(d) to "permit Supplementation even though the original pleading is defective in stating a claim or defense." Id. See also, Lee v. United States, 2011 U.S. Dist. Lexis 6705 (N.D Iowa 2011)(granting motion to expand the record to exclude Supplemental Filing as part the § 2255 record).

SUPPLEMENTAL CLAIM:

Woodard filed a motion to amend that was premature in reference to the almost passed statute of H.R. 3245 instead Congress passed the S1789 which

lowered the ratio penalty from 100 to 1 to 18 to 1. Woodard files this supplement within the time allowed and pray the Courts accept it and place it on record.

SUPPLEMENTAL MOTION

Comes Now, Corey Lidell Woodard, pro se. Petitioner ("Woodard" herein) and respectfully request this Honorable Court Grant Motion for modification of imposed term of imprisonment. To be able to benefit from the newly enacted statute the Fair Sentencing Act 2010.

In support thereof, Defendant represents as follows:

## JURISDICTION:

This Court has jurisdiction pursuant to 18 U.S.C.S. § 3582(C)(1)(B) to modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute. United States v. Garcia-Quintanilla 574 F.3d 295 (5th Cir. 2009)

## STANDARD:

Section 3582 (C)(1)(B) allows a court to modify a previously imposed-sentence if "expressly permitted" by statute. See 18 U.S.C.S. § 3582(C)(1)(B): United States v. Harrison 113 F.3d 135, 137 (8th Cir. 1997)

## STATEMENT OF THE CASE

1. On May 8, 2008, the Defendant was sentenced to a term of imprisonment of 135 months, by this Honorable Court on the following count(s):

2. Under 21 U.S.C. § 841(b)(1)(A), a mandatory minimum sentence of 60 months is applicable to the crack cocaine offense because the quantity of crack cocaine was 28 grams or greater. The exact amount of crack cocaine was approximately 38.26 grams. The Guideline range applicable to this amount was 87-108 months. If the defendant was sentenced for the equivalent amount of the newly imposed ratio of 18 to 1 the range would be 70-87 months.

3. The legislation passed before Congress that reduces the ratio for crack to powder amending 21 USC § 841(b)(1). This legislation have subsequently reduce the 100 to 1 ratio of crack to powder cocaine on which the current mandatory minimum penalties are based, and instead establishes a new ratio of 18 to 1. This legislation, S1789, The Fair Sentencing Act ("FSA" herein) was approved on March 17, 2010 by the Senate, it passed through the House of Representative by voice on July 28, 2010, and was signed in to law August 3, 2010, the President signed the FSA into law.

4. There is now widespread agreement in the Judiciary, the Department of Justice, and the United States Sentencing Commission, that the disparity in penalties for crack and powder cocaine offenses is unwarranted, profoundly unfair, and severe disparate impact on African Americans. Speaking on behalf of the Judicial Conference of the United States, Judge Reggie B. Walton (D.D.C.) noted that the Criminal Law Committee of the Conference had "conclusion that this disparity between sentences was unsupportable, and undermined public confidence in the criminal justice system." Relying on the conclusions of the U.S. Sentencing Commission, Judge Walton observed that the premises underlying the disparity between crack and powder cocaine penalties

have proven to be false, and the disparity actually frustrates the goals of the Sentencing Reform Act. Judge Walton in addition noted that some citizens today believe that federal statutes and the federal courts that enforce them have "racial underpinnings" because of the disparate impact of the crack penalties on African Americans. Although African Americans comprise only 27 percent of federal cocaine powder offenders, they comprise 81.8% of the federal crack cocaine offenders. Since the penalties for crack cocaine are so much more severe than for cocaine powder, this disparity has contributed significantly to the over-incarceration of African Americans and to the perception that our justice system is "influenced by racial considerations."

5. Assistant Attorney General Lanny A. Breuter, testifying on behalf of the Department of Justice, echoed these concerns in his testimony before the Senate Judiciary Commitee. He noted "that the current cocaine sentencing disparity is difficult to justify based on the facts and science, including evidence that crack is not an inherently more addictive substance than powder cocaine," and that [t]he impact of these [crack cocaine] laws has fueled the belief across the country that federal cocaine law are unjust." The Administration has thus concluded that "Congress's goal should be to completely eliminate the sentencing disparity between crack cocaine and powder cocaine."

6. Likewise, the U.S. Sentencing Commission, which is the institutional expert in the field of federal sentencing, has issued four reports over the last 16 years, all consistently concluding that the 100 to 1 crack/powder ratio is unwarranted, that the penalties for crack cocaine overstate the seriousness of the offense, and that the penalties have a sever disparate impact on minorities. (specifically African American)

7. The newly passed legislation, the Fairness in Cocaine Sentencing Act of 2010, is silent regarding the issue of retroactivity for offender sentenced

4

before the act was implicated. What is clear is congress intent because the bill itself states to restore fairness to the federal cocaine sentencing making the implication of the previous passed bill (The Anti-Drug Abuse Acts of 1986 and 1988) was unfair and unjust. Senator Richard J. Durbin introduced the Fair Sentencing Act ("FSA"), stated "[W]e have learned a great deal in the last 20 years, " He said, "We now know the assumptions that led us to create this disparity were wrong." 155 Cong. Rec. S10491 (daily ed. Oct. 15, 2009)(statement of Sen. Durbin introducing S.1789). In order to determine if Congress intended for statute to apply to pending cases, traditional principles of statutory construction apply. These include examining the explicit language of the statute and the context of the statute as a whole. As text and the structure of the Fair Sentencing Act clearly direct that it should apply immediately, it is not necessary to considered the legislative history. A review of the Senate and House records, however, reinforces Congress's push for urgency in sentencing reform. Members of both houses repeatedly stated that the purpose of the Fair Sentencing Act was to remedy past injustices and ensure fairer sentencing in the future. See United States v. American Trucking Ass'ns, 310 U.S. 534, 543-44, 60 S. Ct. 1059, 84 L.ED 1345 (1940)(explaining that when a court is construing a statute, it should prevent absurd results and constructions that are inconsistent with the policy of the statute as a whole.).

8. As noted above, the overwhelming consensus in the Judiciary, the Department of Justice, the Sentencing Commission, and the White House is that the previous and the newly enacted crack/powder disparity is unwarranted, unfair, and contrary to the goals of the Sentencing Reform Act, 18 U.S.C. § 3553(a).

Thus, any sentence imposed under the old and the newly enacted mandatory sentencing scheme for crack cocaine will reflect this fundamental unfairness and be inconsistent with the mandate of § 3553(a). Since a

modification of the sentencing could allowed from the passing of the Fair Sentencing Act 2010 and the imposition of a fair sentence in compliance with § 3553(a), this modification is plainly in the interests of justice.

9. This modification request is also in the interests of judicial economy. The Fair Sentencing Act of 2010 language does not implicate retroactivity but it is clear in it's intent as noted in ¶ 7.

## ISSUE I.

When a statute does not expressly states that the statute is retroactive or not where does the Courts look to for clarification?

### ARGUMENT

While § 2 of the Fair Sentencing Act of 2010 did lower the mandatory minimum sentence applicable to the defendant's particular offense from 120 months to 60 months. Compare 21 U.S.C. § 841(b)(1)(2009) with 21 U.S.C. § 841(b)(1)(2010). There are several Circuits has held, however, that the Fair Sentencing Act cannot be applied retroactively, because ("[T]he Fair Sentencing Act contains no express statement that it is retroactive, and thus the 'general saving statute,' 1 U.S.C. § 109, requires us to apply the penalties in place at the time the crime was committed.") Also noted by the courts of appeals, the general saving statute," 1 U.S.C. § 109, requires courts to apply the penalties in place at the time the crime was committed unless the new version of the relevant statute expressly provides for its own retroactive application. It was said that The Fair Sentencing Act contains no such provision on retroactivity. This assessment by the courts of that statute is not very accurate, the text, structure, and contexts of the Fair

Sentencing Act clearly direct that 'it should be applied immediately, it is not necessary to consider the legislative history. A review of the Senate and the House records, however, reinforces Congress's push for urgency in sentencing reform. Members of both houses has repeatedly stated that the purpose of the Fair Sentencing Act is to remedy past injustices and ensure fairer sentencing in the future'. See: Fair Sentencing Act § 8. "Clear evidence of congressional intent may illuminate ambiguous text. But a court will not take opposite take of allowing ambiguous legislative history to muddy clear statutory language." Milner v. Dep't of the Navy 12/1/2010 Supreme Court in Castillo v. United States 147 L.Ed2D 94 to determine congressional intent look at five factors: 1) language and structure 2) tradition 3) risk of unfairness 4) severity of the sentence 5) legislative history In light of these five factor it can easily be discerned: 1) the text, structure, and the context the quote by both houses "the purpose of the (FSA) is to remedy past injustices and ensure fairer sentences in the future this favor such interpretation as it was meant to retroactively applied 2) courts have typically use Congress assumption for giving an excessive amount of time for crack cocaine sentences. Now that congress has admitted on plenty of occasions that they made an mistaken assumption about the harmfulness of crack and that penalty was unjust and unfair. The new statute was enacted to restore fairness to cocaine sentencing. 3)By Congress own admission of unfairness and the acts very name it is not hard to determined that the risk of unfairness has been proven. 4)to the extent that the Anti-Drug Abuse Act of 1986 failed in its reasoning for the severity of the sentencing 5) the length and severity of the added mandatory sentences that turns on the presence or absence of the factors used to inflate sentencing for cocaine weighs in favor of treating such form of the drug as referring to an element of a crime requiring more punitive damaged.

## The Saving Statute:

The Fair Sentencing Act does not expressly address whether it applies to previously convicted individual who were conviction and sentences became final before the Fair Sentencing Act was enacted. Due to the absence of this explicit language, the government argues that the Saving Statute, 1 U.S.C. § 109 "saves" the old mandatory minimums and prohibits the application of the Fair Sentencing Act's mandatory minimums to final sentencing. A thorough review of the history, language, and purpose of this statute, however, demonstrates that the Saving Statute should not be applied if it frustrates congressional intent as evidenced either by express declaration or necessary implication in the new or amended statute. As stated previously above the words of both houses "the purpose of the Fair Sentencing Act is to <u>remedy past injustices</u> and ensure fairer sentencing in the future."

The Supreme Court has said that the Saving Statute should not be given effect if its contrary legislative intent exists. In other words, the Statute "cannot justify a disregard of will of Congress as manifested, either expressly or by necessary implication, in a subsequent enactment. "Great No. Ry. Co. v. United States, 208 U.S. 452, 465, 28 S. Ct. 313, 52 L. Ed. 567 (1908); see also Hertz v. Woodman, 218 U.S. 205, 217, 30 S. Ct. 621, 54 L. Ed. 1001, T.D. 1636 (1910)(noting that the Saving Statute is a rule of construction... to be read and construed as part of all subsequent repealing statutes, in order to give effect to the will and intent of Congress"). If an act of Congress contains a "specific directive" that "can be said by fair implication or expressly to conflict with § 109," then the act supercedes the Saving Statute. <u>Lockhart v. United States</u>, 546 U.S. 142, 148, 126 S. Ct. 699, 163 L. Ed. 2d 557 (noting that Congress mat "make its will known in whatever fashion it deems appropriate, " either expressly or by necessary or fair implication, "that is, without an expressed statement.")(Scalia J., concurring)

## Application of the Saving Statute to the Fair Sentencing Act:

In passing the Fair Sentencing Act, Congress began to correct the failures of the Anti-Drug Abuse Act of 1986. It acknowledged that the premise of the 1986 Act was flawed and its impacted was racially skewed. The Government is arguing that the Courts should continue to uphold these misguided mandatory minimums even after Congress has recognized their injustice. As set forth in the principle of law, reason, and fairness render this a position that the Courts cannot accept. Congress has identified a remedy. The President signed it into law. That the Courts will apply the Fair Sentencing Act, both its amended Guidelines and mandatory minimums to crack cocaine cases. See: United States v. Smith, 359 F.Supp. 2d. 771(E.D.Wis. 2005) and Simon v. United States, 361 F.Supp. 2d. 35,45(E.E.N.Y.2005), where both these District Court decisions explain in detail why.

Also the Sentencing Commission stated many of the assumptions that underly the Commissions reasons for the 100 t0 1 ratio has not held up after further research and that such ratio sentences over exaggerated the degree of harmfulness of crack. Now Congress has finally came forth and admitted that they irresponsibly rushed to judgment in using the 100 to 1 ratio to determine crack sentences versus the powder cocaine as stated in both Smith and Simon District Court decisions. See Fair Sentencing Act of 2010.

Also Congress admitted that they themselves relied on faulty unproven information when they used the 100 to 1 ratio when they enacted the Fair Sentencing Act 18 to 1 ratio. The Sixth Circuit of Appeals in United States v. Carradine, 6th Cir. Case No. 08-3220 (September 20, 2010), was the first court of appeals to address the retroactive allocation of the Fair Sentencing Act 2010 18 to 1 retroactively question and the Sixth Circuit used Congress Saving Statute, 1 U.S.C. § 109, to deny the retroactive application. The

statute, 1 U.S.C. § 109, states "the repeal of any statute, unless the repealing act shall so expressly provide, the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, and such statute shall be treated as remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty forfeiture or liability." The Defendant claims the government and the Sixth Circuit was wrong to rely on the Saving Statute, 1 U.S.C. § 109. citing Supreme Court decision <u>Warden v. Marrero,</u> 417 U.S. 653 (1074), which stated the Saving Statute has been held to bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of the offense.

Thus, such decision does not properly address the 100 to 1 ratio application or repeal for the following reasons: First, the courts have upheld the constitutionality of the use of he 100 to 1 ratio use by Congress because of their belief that Congress had legitimate constitutional reasons for using the 100 to 1 ratio. Now that Congress has admitted themselves that they had no legitimate reasons for using the 100 to 1 ratio and that they acted irresponsibly by rushing to judgment and relying on unfounded and unproven information. See Smith and Simon District Court decisions, the courts must reevaluate their constitutional decisions in continuing to use and uphold the 100 to 1 ratio.

The Courts must now consider Congress's own Congressional findings and statements which states there is no justifiable reason for the use of the 100 to 1 ratio. This opinion is shared by the Obama Administration and the Department of Justice.

Therefore, the courts cannot, constitutionally, continue to use or uphold the 100 to 1 ratio which has been deemed incorrect and unjustly by Congress themselves. See Fair Sentencing Act. The Saving Statute, 1 U.S.C. §

109, cannot force the courts to continue applying or upholding a statute using the 100 to 1 ratio when the constitutional validity has been eroded by Congress itself. See Fair Sentencing Act § 8 Further, the Court's alternative holding reinforces the Saving Statute's underlying premises: first, congressional intent must be adhered to, and second, the statute is intended to prevent technical abatements.

Finally, it is generally understood that an earlier Congress cannot bind a later Congress to restrict acts of a subsequent Congress. To insist on express statements, as the government urges, would require Congress to use the "magical passwords" that the Supreme Court has repeatedly decided and threaten to frustrate legislative will. See Lockhart, 546 U.S. at 145. In Lockhart, for example, Justice Scalia wrote that Congress's requirement of express statements places an unnecessary "burden [on] the future exercise of legislative power." Id. at 149 (concurring opinion). These technical requirements, he he wrote, should not prevent Congress from acting. As he explained, "[w]hen the plain import of a later statute directly conflicts with an earlier statute, the later enactment governs, regardless of its compliance with any earlier-enacted requirement of an express reference." Id. In this case, Congress's intent is easily discernible from the text, structure, and history of the FSA. The Act contains a clear and specific directive; an express statement would be redundant. Congress intended for the new mandatory minimums to apply as soon as possible and to prior convictions.

Therefore, if the courts were required to continue using the 100 to 1 ratio on defendants who committed their crimes prior to the enactment of the 2010 Fair Sentencing Act new 18 to 1 ratio because of the Savings Clause Statute, 1 U.S.C. § 109, statutory application in such cases unconstitutional in violation of the Eighth Amendment against cruel and unusual punishment.

Also, because no court can be required to continue using a 100 to 1 ratio after the statute has been called into question by Congress itself when Congress admitted they rushed to judgment and relied on unfounded and untrue reasons in using the 100 to 1 ratio. See both Smith and Simon District Court decisions and the 2010 Fair Sentencing Act. The courts themselves also relied upon the same unfounded and untrue reasons in upholding the constitutional validity of the use of such ratio.

Therefore it is for these reasons why the courts must apply the new Fair Sentencing Act of 2010 18 to 1 ratio retroactive to all cases or offenses committed prior to enactment. The courts can no longer justify the constitutionality of the 100 to 1 ratio when Congress itself has admitted there is no justifiable reasons for the 100 to 1 ratio use. By these reason the retroactive application must be applied to keep those defendants who have committed their crimes prior to the enactment of the 2010 Fair Sentencing Act 18 to 1 ratio, but have not yet been sentenced, from having an unconstitutional ratio applied in sentencing them. This means that all defendants may receive the retroactive benefit because the statute was unjust from enactment.

WHEREFORE, for the foregoing reasons, it is respectfully requested that the instant motion for modification of sentencing be granted.

Respectfully submitted

*October, 20, 2011*
Date

*Cory Lidell Woodard*
Corey Lidell Woodard
Reg. No. 10071-029
FCI Sandstone
I-Unit P.O. Box 1000
Sandstone, MN. 55072